SIXTH DIVISION
June 8, 2007

No. 1-06-0620


VINCENT BELLIK,                          )     Appeal from the Circuit
                                         )     Court of Cook County.
    Plaintiff-Appellant,           )
                                         )
    v.                             )     No. 04 M1 137529
                                         )
BANK OF AMERICA,                         )     Honorable
                                         )     Judge James F. Stack,
    Defendant-Appellee.            )     Presiding.


JUSTICE O'MALLEY delivered the opinion of the court:

The instant cause involves third-party litigation wherein Vincent Bellik, as a third-party plaintiff, filed a third-party complaint against a number of third-party defendants, including Bank of America.[1]

Bellik appeals from the circuit court's order that dismissed with prejudice his third-party complaint against Bank of America pursuant to section 2-615 of the Code of Civil Procedure (the Code) (735 ILCS 5/2-615 (West 2004)). On appeal, Bellik contends that the circuit court erred when it dismissed his complaint because it was sufficient as a third-party complaint against Bank of America. Alternatively, Bellik contends that the circuit

_____

[1]In his third-party complaint, Bellik also brought claims against Gerald Gorman, individually and doing business as Dodge of Midlothian; Daimler Chrysler Services North America, LLC; and Bank of America. Bellik and Bank of America are the only parties to the instant appeal.

court erred in dismissing his complaint with prejudice where its purported defects could be cured by amendment. For the reasons that follow, we affirm the judgment of the circuit court.

BACKGROUND

The instant cause arose from litigation initiated by Harris Bank[2] against Vincent Bellik for money owed under a sales contract for a 2002 Dodge Dakota (hereinafter referred to as Harris Bank litigation). Following repossession and sale of the Dakota in January 2004, Harris Bank recovered a deficiency judgment against Bellik for $9,846.23.

In February 2005, as a result of the Harris Bank litigation, Bellik, as third-party plaintiff, filed a "third party complaint for declaratory judgment and other relief" against three third-party defendants, namely: (1) vehicle dealer Gerald Gorman, individually and doing business as Dodge of Midlothian (Gorman); (2) Daimler Chrysler Services North America, LLC. (Chrysler); and (3) Bank of America. This complaint is the subject of the instant appeal.

Bellik's complaint alleged, in pertinent part, that he traded in the Dakota (the vehicle at issue in the Harris Bank litigation) to Gorman in connection with a sales contract for Bellik's purchase of a 2003 Dodge Stratus (hereinafter Stratus

---

[2]Harris Bank is not a party to this appeal.

sales contract).  Bellik further alleged that, pursuant to the Stratus sales contract, "O'Gorman[3] [*sic*] and Chrysler had an obligation to promptly submit the payoff" of Harris Bank's lien on the Dakota.  According to Bellik, Gorman and Chrysler failed to satisfy Harris Bank's lien on the Dakota, which constituted breaches of their contractual and fiduciary duties.  Bellik further claimed that Bank of America was obligated under the Stratus sales contract because it was "listed as a party" in that contract.

Bellik attached to his complaint the Stratus sales contract, which was dated September 29, 2003.  In regard to the Dakota, the Stratus sales contract indicated that Bellik had traded in a "2002 Dodge Dakota" with a value of $20,000 and a lien payoff in the amount of $19,863, for a net trade of $137.  The purchase price of the 2003 Stratus was $33,418.43.  In regard to Bank of America, the Stratus sales contract, in its entirety, referenced Bank of America in one sentence, specifically, as follows:

> "Buyer promises to pay to the order of
> seller at the offices of Bank of America
> (Assignee) located in Jacksonville, Illinois,
> the amount financed shown above together with

---

[3]In the pleadings, Bellik alternatively referred to Gerald Gorman as "Gorman" and "O'Gorman."  On appeal, both parties refer to that individual as "Gorman," and we will also.

3

a finance charge on the principal balance of the amount financed from time to time unpaid at the rate of 6.59% per annum from date until maturity in 71 installments of $518.11 each and a final installment of $518.11, beginning on November 13, 2003 and continuing on the same day of each successive month thereafter until fully paid."

Ultimately, Bellik's complaint contained three counts, all of which were based on Gorman's and Chrysler's purported failure to pay off Harris Bank's lien on the Dakota in connection with Bellik's purchase of the Stratus.  First, Bellik requested a declaratory judgment that the balance owed by him under the Stratus sales contract was "null and void," and that he was the owner of the Stratus.  Second, Bellik requested damages based on Gorman's and Chrysler's alleged breach of contract.  Third, Bellik requested damages based on Gorman's and Chrysler's alleged breach of fiduciary duty.  Bellik also sought an "offset" of the debt due to Bank of America under the Stratus sale contract, relying on certain contractual language related to consumer credit issues.

In September 2005, Bank of America filed a motion to strike Bellik's third-party complaint pursuant to section 2-615 of the

Code (735 ILCS 5/2-615 (West 2004)), arguing that none of Bellik's claims properly constituted a third-party claim under section 2-406(b) of the Code (735 ILCS 5/2-406(b) (West 2004)). Bank of America further argued that, assuming Bellik's claims properly constituted third-party claims, they should be stricken as legally insufficient. Bank of America also asserted that Bellik's claims against it should be dismissed with prejudice because they failed on their merits as a matter of law.

In November 2005, Bellik filed a response to Bank of America's motion to dismiss, arguing that his complaint was properly filed as a third-party complaint and that his claims were legally sufficient.

In January 2006, the circuit court granted Bank of America's motion to dismiss Bellik's third-party complaint and dismissed it with prejudice as to Bank of America only. The court adopted the reasoning set forth in Bank of America's motion to strike.

In February 2006, Bellik filed a motion to reconsider the circuit court's January 2006 decision, primarily challenging the circuit court's dismissal with prejudice, and requesting the circuit court to either reverse its decision and permit an amendment of the pleadings or a refiling of a direct action against Bank of America.

In March 2006, the circuit court denied Bellik's motion to

reconsider.

Subsequently, also in March 2006, Bellik appealed the circuit court's January 2006 order and its denial of his motion to reconsider.

ANALYSIS

On appeal, Bellik challenges the circuit court's order that granted Bank of America's section 2-615 motion to dismiss his complaint with prejudice. Specifically, Bellik asserts that "the third party complaint was sufficient and proper, as the subject matter of the third party complaint arose from the same transaction as the original complaint." Bellik also asserts that he, as a consumer, "can maintain an action against an assignee for sums paid pursuant to the holder in due course provisions of the retail installment contract" for the Stratus (hereinafter referred to as the Federal Trade Commission (FTC) Holder Notice).[4] Last, Bellik asserts that the circuit court's dismissal with prejudice constituted error where the alleged defect could be cured by amendment.

A. Section 2-615 Motion to Dismiss

We review *de novo* the circuit court's decision to dismiss plaintiff's complaint pursuant to a section 2-615 motion (735

---

[4]In specific regard to the FTC, Bellik claims that "due to the Federal Trade Commission language, the Bank effectively 'inherits' Midlothian's wrongdoing."

ILCS 5/2-615 (West 2004). Marshall v. Burger King Corp., 222 Ill. 2d 422, 429 (2006). A section 2-615 motion challenges the legal sufficiency of a complaint based on defects apparent on its face. Marshall, 222 Ill. 2d at 429. When reviewing the complaint, we accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts, and construe the allegations contained in the complaint in the light most favorable to the plaintiff. Marshall, 222 Ill. 2d at 429. Ultimately, a dismissal pursuant to a section 2-615 motion should be granted only where it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery. Marshall, 222 Ill. 2d at 429. Thus, in this case, we must analyze the legal sufficiency of Bellik's third-party complaint against Bank America.

A third-party action is a procedural device that allows a defendant to bring a cause of action against a party who was not joined in the original action. Guzman v. C.R. Epperson Construction, Inc., 196 Ill. 2d 391, 399 (2001). Section 2-406(b) of the Code allows the filing, by a defendant, of a third-party complaint against a nonparty "who is or may be liable to [the defendant] for all or part of the plaintiff's claim against [that defendant]." 735 ILCS 5/2-406(b) (West 2004).

Therefore, the majority of third-party complaints rely on

claims for indemnification or contribution because third-party actions "require that the party seeking relief assert a claim of derivative liability." Guzman, 196 Ill. 2d at 399. In the context of third-party actions, derivative liability is "'where the liability of the third-party defendant is dependent on the liability of the third-party plaintiff to the original plaintiff.'" Perry v. Minor, 319 Ill. App. 3d 703, 709 (2001), quoting Board of Trustees of Community College, District No. 508 v. Coopers & Lybrand LLP, 296 Ill. App. 3d 538, 549 (1998).

Here, Harris Bank (the original plaintiff) brought suit against Bellik seeking a default judgment based on a contract related to Bellik's purchase of the Dakota. However, Bellik's third-party complaint against Bank of America is based on an entirely separate and distinct contract and transaction, namely, the Stratus sales contract. In fact, as defendant concedes in his brief, Bank of America was not a party to the contract for sale of the Dakota.[5] Consequently, Bank of America cannot be found liable for any of Harris Bank's claims against Bellik based on that contract. See 735 ILCS 5/2-406(b) (West 2004).

Moreover, the Stratus sales contract upon which Bellik

---

[5]In his brief, Bellik states "[t]he original complaint was a suit for a nonpayment of an installment note pursuant to a purchase of an automobile, through Midlothian Dodge [sic] prior to the involvement of the [sic] Bank of America." (Emphasis added.)

relies in his third-party complaint is silent regarding the Dakota contract at issue in the underlying Harris Bank litigation. Although the Stratus sales contract indisputably references the Dakota as a trade-in vehicle, it does not impose any contractual duties or obligations on Bank of America to pay off the lien owed by Bellik on that Dakota.  In addition, as Bellik acknowledges in his brief, Bellik's third party-complaint did not expressly seek indemnification or contribution from Bank of America for Harris Bank's deficiency judgment of $9,846.23.[6] See Guzman, 196 Ill. 2d at 399.  Simply put, "third-party actions cannot be used to maintain an entirely separate and independent claim against a third party, even if it arises out of the same general set of facts as the main claim."  People v. Brockman, 143 Ill. 2d 351, 364-65 (1991).

Furthermore, contrary to Bellik's position that Bank of America, as an assignee of the Stratus sales contract, "inherits" the alleged wrongdoing of Gorman (the car dealer) because of the FTC Holder Notice language in the Stratus contract, our supreme court has recognized that the FTC Holder Notice, which is required in all consumer credit contracts, "only permits

---

[6]In his brief, Bellik states that "[w]hile [he] may not have used the magic word 'contribution' or 'indemnity' in his pleading, the offset which is sought is clearly implied and at the very least if this language was an important issue, leave to amend should have been granted."

affirmative actions against assignees where the seller's breach is so substantial that rescission is warranted." Jackson v. South Holland Dodge, Inc., 197 Ill. 2d 39, 54-55 (2001) (discussing FTC commentary on the FTC Holder Notice). Here, Bellik does not contend that rescission is warranted and thus cannot maintain an affirmative action against Bank of America by relying on the FTC Holder Notice. Furthermore, the central role of the FTC Holder Notice is to confirm "the right of buyers to withhold payment from sellers or assignees, if it becomes apparent that the car purchased is a lemon." Jackson, 197 Ill. 2d at 54. Such is not the situation presented in this case.

Accordingly, we find that the circuit court correctly granted Bank of America's motion to dismiss Bellik's third-party complaint because Bank of America was not a party to the contract that forms the basis of the original litigation, and the FTC Holder Notice does not permit an affirmative action against Bank of America, as an assignee, under the circumstances here.

Defendant's reliance on our decision in Felde v. Chrysler Credit Corp., 219 Ill. App. 3d 530 (1991), is misplaced. Most notably, in Felde, the plaintiffs expressly requested cancellation and revocation of the retail installment contract at issue, based upon defects in an automobile they had purchased pursuant to that contract. Felde, 219 Ill. App. 3d at 533.

10

Here, in contrast, Bellik did not request the cancellation of the contract at issue, nor did he allege that his vehicle was defective.

We decline Bellik's request to impose a duty on Bank of America, as an assignee of a retail installment contract for the sale of an automobile, to "make at least a threshold inquiry as to whether the terms of the agreement have been fully performed prior to accepting such assignments." As Bellik concedes, there is no relevant authority for such a proposition, and we therefore conclude that imposition of such a duty would more properly be addressed by the legislature. See, e.g., City of Chicago v. Holland, 206 Ill. 2d 480, 489 (2003) (recognizing that "the General Assembly is free to enact any legislation that the constitution does not expressly prohibit").

## B. Dismissal with Prejudice

Last, Bellik argues that the circuit court erred in dismissing his third-party complaint with prejudice, contending that he "was precluded from filing an amended pleading, and, since the dismissal was with prejudice, the direct filing of an action against Bank of America." Bellik argues that he should have been granted an opportunity to amend his complaint.

A circuit court may properly dismiss a complaint with prejudice under section 2-615 of the Code where it is clearly

11

apparent that the plaintiff can prove no set of facts that entitles them to recovery, and we review *de novo* the court's decision in that regard. Schiller v. Mitchell, 357 Ill. App. 3d 435, 438-39 (2005). Ordinarily, the circuit court should give a plaintiff at least one opportunity to cure the defects in his or her complaint. Schiller, 357 Ill. App. 3d at 453.

Here, contrary to Bellik's claims on appeal, he never articulated to the circuit court any potential amendments to his third-party complaint prior to its dismissal. Instead, after the circuit court dismissed his complaint, Bellik filed a motion to reconsider, urging the circuit court to either reverse its decision and allow him to replead or modify its decision from a dismissal with prejudice to a dismissal without prejudice. However, Bellik proposed no amendments to his complaint that would prevent its dismissal. In light of our determination that Bellik's third-party complaint was properly dismissed by the circuit court pursuant to section 2-615 of the Code, and Bellik offered no potential amendments to his original complaint to cure its defects, we find that the circuit court did not abuse its discretion when it dismissed his complaint with prejudice.

CONCLUSION

For the foregoing reasons, we affirm the judgement of the circuit court.

1-06-0620

Affirmed.

FITZGERALD-SMITH, P.J., and JOSEPH GORDON, J., concur.