BRANDY A. EYRICH, Plaintiff-Appellant, v. ESTATE OF CORY L. WALDEMAR, Deceased, *et al.*, Defendants-Appellants.

Third District    No. 3—01—0217

Opinion filed February 21, 2002.

LYTTON, P.J., dissenting.

Bradley W. Swearingen (argued), of Moehle, Swearingen & Umholtz, Ltd., of Washington, for appellant.

Larry D. Kuster (argued) and H. Allen Yow, both of Rammelkamp, Bradney, Kuster, Keaton, Fritsche & Lindsay, of Jacksonville, for appellee.

JUSTICE HOLDRIDGE delivered the opinion of the court:

Plaintiff, Brandy A. Eyrich, appeals from a judgment of the circuit court of Tazewell County granting defendant Grayboy Cycle Center, Inc's. (Grayboy) motion for summary judgment on plaintiff's negligent sale and entrustment claim. The trial court determined that no genuine issue of material fact existed and that Grayboy was entitled to judgment as a matter of law. For the following reasons, we affirm the judgment of the trial court.

This cause arose out of an accident that involved a motorcycle driven by Cory L. Waldemar colliding with an automobile driven by Jana M. Ridings. Plaintiff, Brandy A. Eyrich, was a passenger on

Waldemar's motorcycle. The allegations of the complaint are that Waldemar was attempting to pass a row of vehicles when Ridings made a left turn into Waldemar's path, causing Waldemar to collide with Ridings' vehicle. Waldemar died as a result of injuries sustained in the accident, and Eyrich sustained serious injuries.

Eyrich filed a multicount complaint. The count pertinent to this appeal alleges that Grayboy, a retail seller of motorcycles, was negligent in the sale and entrustment of the motorcycle to Waldemar some 10 days prior to the accident. Specifically, Eryich claimed that Grayboy knew or should have known that Waldemar did not have a valid license to operate a motorcycle at the time he purchased the motorcycle from Grayboy and that Waldemar, due to inadequate training, education and experience, was not competent to safely operate a motorcycle on public highways. Eryich further alleged that it was foreseeable on the part of Grayboy that the sale of the motorcycle to Waldemar posed a risk of injury to others, including Eryich.

Grayboy moved for summary judgment, maintaining that no genuine issue of material fact existed as to whether it knew or should have known at the time it sold the motorcycle to Waldemar that he was not competent to operate the motorcycle or that the sale posed a risk of injury to others. Attached to the motion were several discovery deposition transcripts, which established the following uncontested facts: (1) Waldemar was 20 years old at the time he purchased the motorcycle from Grayboy; (2) Waldemar had a valid Illinois driver's license; however, he did not have a classification (class M) to operate a motorcycle; (3) Waldemar owned an automobile, which was insured through a policy issued to him by American Family Insurance; (4) Waldemar was employed; (5) Waldemar negotiated the purchase of the motorcycle from Grayboy and obtained a loan for the funds necessary to make the purchase; (6) Waldemar's mother accompanied him to pick up the motorcycle from Grayboy and did not express concern about her son's operation of the motorcycle; (7) Waldemar had prior experience operating both motorcycles and automobiles; and (8) Waldemar had one prior ticket for speeding and had never been involved in a vehicular accident.

In addition to the above-uncontested facts, Alfred A. Gray, sales manager and co-owner of Grayboy, testified at deposition that the State of Illinois does not require a person to have a license to operate a motorcycle in order to purchase a motorcycle, nor does the state require motorcycle dealers to verify that a purchaser is licensed to operate a motorcycle.

Eyrich maintained that Waldemar's age, driving record (one ticket for speeding), and lack of a class M driver's license were sufficient to

establish a genuine issue of material fact as to whether Grayboy knew or should have known that Waldemar was not competent to safely operate a motorcycle on public highways and that the sale of the motorcycle to Waldemar posed a risk of injury to others. The trial court granted summary judgment to Grayboy. Eyrich appealed.

■ Appeals from a trial court's grant of a motion for summary judgment are reviewed *de novo*. *In re Estate of Lind*, 314 Ill. App. 3d 1055 (2000). Summary judgment is appropriate where "the pleadings and depositions on file, together with the affidavits, if any, demonstrate there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." *Verkruysse v. Neese*, 252 Ill. App. 3d 831, 833 (1993). For the purpose of summary judgment, "[a]n issue of fact is not material, even if disputed, unless it has legal probative force as to the controlling issue." *First of America Bank, Rockford, N.A. v. Netsch*, 166 Ill. 2d 165, 178 (1995).

■ An action for negligent entrustment consists of " ' "entrusting a dangerous article to another whom the lender knows, or should know, is likely to use it in a manner involving an unreasonable risk of harm to others." ' [Citations.]" *Zedella v. Gibson*, 165 Ill. 2d 181, 186 (1995). An automobile is not a dangerous article *per se* but may become one if it is operated by a person who is unskilled in its use. See *Union Bank of Chicago v. Kalkhurst*, 265 Ill. App. 254, 259 (1932). Thus, a person may be liable for negligently entrusting an automobile to one whom the person knows or should know is incompetent, inexperienced, or reckless. See *Kosrow v. Acker*, 188 Ill. App. 3d 778, 783 (1989).

Eyrich maintains that a genuine issue of material fact exists as to whether Grayboy knew or should have known that Waldemar was incompetent, inexperienced or reckless. Eyrich relies heavily upon *Small v. St. Francis Hospital*, 220 Ill. App. 3d 537 (1991), where the court held that an allegedly negligent sale of an automobile can sustain a cause of action for negligent entrustment. In *Small*, the defendant car dealership sold an automobile to an unlicensed 15-year-old minor. In holding that the plaintiff could proceed with a negligent entrustment action against the seller, the court in *Small* noted:

> "We emphasize that our holding does not require that a seller of a car, whether commercial or private, must ask for a driver's license or investigate driving proficiency in every case; however, when a car seller has reason to know that a prospective buyer is underage, unlicensed, or otherwise incompetent, a cause of action for negligent entrustment exists." *Small*, 220 Ill. App. 3d at 542.

■ In *Small*, the fact that the person to whom the seller sold the

car was a minor without a driver's license was sufficient to state a cause of action for negligent entrustment. In the instant matter, however, Waldemar, at the time he purchased the motorcycle, was 20 years old (*i.e.*, not a minor), held a valid driver's license, was gainfully employed, owned an automobile that was properly insured, and had previously owned and operated a motorcycle. The evidence indicated that Waldemar had one speeding ticket and that Grayboy may have been aware of that fact. In sum, Waldemar presented himself to Grayboy as a competent adult and a responsible driver. The record is void of any fact which placed Grayboy on notice that Waldemar was reckless, incompetent or inexperienced. We reiterate the admonition in *Small* that a seller of a vehicle is under no obligation to investigate the driving abilities of a customer.

Eyrich argues that the fact that Waldemar did not have an M classification on his driver's license should be sufficient to suggest that Grayboy knew or should have known that Waldemar was incompetent, inexperienced or reckless in the operation of a motorcycle. We disagree. Failure of a motorcyclist to have a valid operator's license is not evidence of negligence. *French v. City of Springfield*, 65 Ill. 2d 74, 80-81 (1976) ("licensing statutes do not set forth specific standards of care and the fact that a driver has not submitted to the State for testing of his driving skills is not evidence that he was driving negligently when involved in an accident"). If failure to have an M classification on his driver's license could not stand as evidence of Waldemar's negligence, it could not stand as evidence that Grayboy knew or should have known that he would operate the motorcycle in a negligent manner.

Eyrich also asserts that Waldemar had "a poor driving record," which should have alerted Grayboy that he would operate the motorcycle in a negligent manner. The record does not support that contention. The only evidence in the record concerning Waldemar's prior driving record comes from his mother, who testified that her son had previously received one speeding ticket and one ticket for having tinted windows. It cannot be reasonably concluded that a 20-year-old adult, with one prior speeding ticket, posed a risk of harm to others.

Reviewing the record *de novo*, we find no evidence that would create a genuine issue of material fact concerning whether Grayboy knew or should have known that Waldemar would operate the motorcycle in a negligent manner. Nothing in the record could support an inference that Grayboy was on notice that Waldemar would operate the motorcycle in a dangerous manner. Therefore, we find that the trial court was correct in granting Grayboy's motion for summary judgment.

For the foregoing reasons, we affirm the judgment of the circuit court of Tazewell County granting defendant's motion for summary judgment.

Affirmed.

SLATER, J., concurs.

PRESIDING JUSTICE LYTTON, dissenting:

I respectfully dissent. The majority asserts that there are no genuine issues of material fact. There are.

The majority acknowledges that a cause of action for negligent entrustment exists when the seller of a vehicle "has reason to know that a prospective buyer is *underage, unlicensed or otherwise incompetent.*" (Emphasis added.) *Small*, 220 Ill. App. 3d at 542. However, having correctly stated the three possible bases for a negligent entrustment claim, the majority speculates that one of them is not a factor after all and proceeds to excise it from the law. The majority permanently removes entrustment of a vehicle to an unlicensed driver from those affected by this cause of action.

The majority holds that since a buyer's lack of a valid license is not evidence of negligence in an accident, it can never be evidence of negligent entrustment. We are dealing in apples and oranges here.

The plaintiff must prove Waldemar's actual negligence in operating the motorcycle. Once negligence is shown, however, the causal connection between Grayboy's negligent entrustment and the plaintiff's injuries is established. See *Seward v. Griffin*, 116 Ill. App. 3d 749, 755 (1983). A mere showing that Waldemar was unlicensed does not make him negligent (see, *e.g., French v. City of Springfield*, 65 Ill. 2d 74 (1976)), but a dealer's independent negligence in entrusting the vehicle to a generally incompetent driver is very different than the driver's negligence in any particular accident. If the plaintiff can establish Waldemar's negligence through other evidence, Grayboy's knowledge that Waldemar was unlicensed becomes relevant to the question of Grayboy's negligence.

In reaching the opposite conclusion, the majority overlooks this court's holding in *Seward*, where we stated, "[E]ntrusting a car to an unlicensed driver is tantamount to entrusting a car to an incompetent driver ***." *Seward*, 116 Ill. App. 3d at 754. In *Seward*, a driver was negligent in causing an accident. We held that a car dealer was independently negligent in entrusting a vehicle to that driver when the dealer had actual knowledge that the driver was unlicensed. *Seward*, 116 Ill. App. 3d at 755. There is no reason for this court to overrule *Seward*.

The essential issues before the court on summary judgment were whether Waldemar was unlicensed and inexperienced when he bought his motorcycle, and, if so, did Grayboy have reason to know it?

Conflicting facts presented at the motion for summary judgment show the need for a trial. While Waldemar held a valid license to drive an automobile, there was evidence that he did not hold a license to operate a motorcycle. There was also evidence that Grayboy regularly inquired into prospective buyers' licensing status and riding experience. Further, there was deposition testimony that Waldemar had operated small, off-road motorcycles before he purchased a street motorcycle from Grayboy, but that he had never operated any motorcycles on the road. Finally, there was evidence that the motorcycle purchased by Waldemar was an especially powerful sports model capable of attaining a top speed of 160 to 180 miles per hour within 10 seconds of a standing start. A fact finder could easily infer that Grayboy sold a powerful motorcycle to Waldemar knowing that he was unlicensed, inexperienced and thus incompetent to operate such a vehicle on the open road.

Because the majority failed to apply the law stated in *Seward* to this case, and because there was evidence that Grayboy knew that Waldemar was incompetent to operate the motorcycle he purchased, genuine issues of material fact exist. I would reverse and remand.