NOTICE
Decision filed 08/29/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 250307-U

NO. 5-25-0307

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| *In re* RYVER C., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Jasper County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 22-JA-4 |
| | ) | |
| Bryttinee C., | ) | Honorable |
| | ) | Chad M. Miller, |
| Respondent-Appellant). | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court.
Justices Cates and Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*: We lack jurisdiction to address the respondent's challenges arising from the November 17, 2022, adjudicatory hearing. Appeal dismissed.

¶ 2    The respondent appeals following the March 13, 2025, denial of her motion to reconsider termination of parental rights. For the following reasons, we dismiss this appeal.

¶ 3                                I. BACKGROUND

¶ 4    The respondent, Bryttinee C., is the mother of Ryver C., born on December 2, 2021. On July 14, 2022, the State filed a petition for adjudication of wardship. The petition alleged Ryver was a neglected minor as defined by section 2-3(1)(b) of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/2-3(1)(b) (West 2024)). That same day, the circuit court held a shelter care hearing, at

1

which time David Benney was appointed to represent the respondent. The conflicts public defender, Christopher Elliot, was appointed to represent Ryver. At the conclusion of the hearing, temporary custody of Ryver was awarded to the Department of Children and Family Services (DCFS).

¶ 5    On November 17, 2022, the circuit court conducted an adjudicatory hearing. At the beginning of the hearing, it was announced that the respondent would be stipulating to paragraph (a) of the State's petition, which reads as follows:

"3. The minor is **NEGLECTED** pursuant to 705 ILCS 405/2-3(1)(b) by reason of the following facts:

The minors' environment is injurious to his welfare for one or more of the following:

a.      Mother and Father[1] have a history of drug abuse and are both believed to be currently using illegal substance and methamphetamine."

The circuit court accepted the respondent's stipulation, and an adjudicatory order was entered finding Ryver neglected that same day.

¶ 6    On February 21, 2023, a dispositional hearing commenced[2] before the circuit court. At the conclusion of the dispositional hearing, the circuit court adjudged Ryver a ward of the court as being in his best interest and welfare, finding that the respondent was unable, for some reason other than financial circumstances alone, to care for, protect, train, or discipline Ryver. The circuit court noted that reasonable efforts were made but were unsuccessful at the time and ordered custody and guardianship of Ryver to remain with DCFS.

---

[1]Ryver's father is not a party to this appeal.

[2]In this case, the record reveals that several continuances were sought and received before the dispositional hearing.

¶ 7    On January 4, 2024, Benney filed a motion for leave to withdraw as counsel at "the behest of the respondent." The motion alleged communication had broken down between Benney and the respondent, "such that there had been a break down in the attorney-client relationship," which rendered legal representation "no longer practical." On January 9, 2024, a permanency hearing was held, during which the circuit court asked Benney whether he had discussed the decision to withdraw as counsel with the respondent. The following colloquy transpired:

"MR. BENNEY: I have. We had a conversation last Thursday and actually this motion is being made at her request and I, at this point, agree with her in her request. Judge, I think the court is aware that in the 14 or so years that I have been working in juvenile court, I can probably count the number on one hand of cases where I've had to withdrew [*sic*] on a Respondent parent. In this particular situation, [the respondent] requested that I withdraw. She is adamant about it. I do believe that she may benefit from a change of counsel. She may be better off with someone else, and I would note that we have a conflicts public defender now that doesn't appear would have a conflict in this case and so withdraw in this case can be accomplished without undue delay or prejudice to the Respondent mother in this case.

Bottom line, Judge, although I'm willing to do it, considering the posture this case is in and my client's feelings about my representation or, in her view, lack thereof, I do respectfully make the motion. Again, I have discussed it with [the respondent]. In fact, she broached the idea and I believe that she consents to withdrawal.

THE COURT: [Respondent], you've heard what Mr. Benney has said. Is that indeed your request?

RESPONDENT: Yeah.

3

THE COURT: You have the right to an attorney in these proceedings. You don't have the right to choose your attorney. One was appointed for you. I know these are difficult situations and oftentimes leads to some difficulty in communicating. Mr. Benney, do you believe your ability to effectively represent [the respondent] has been compromised due to the breakdown of your attorney-client relationship?

MR. BENNEY: At this point, Judge, unless the court requires it, I don't want to go into detail because I don't want it to further prejudice [the respondent] at any—but, in any event, I believe that we're past the point of no return as far as the discourse that has occurred in this case here recently.

THE COURT: [Respondent], do you have any objection to the court granting Mr. Benney's request to withdraw as your attorney?

RESPONDENT: No."

The circuit court granted the motion to withdraw and appointed Elliot to represent the respondent. Following Elliot's appointment, the State filed a motion to terminate the respondent's parental rights. The circuit court informed the respondent she was "welcome to speak to Mr. Elliot" if she had any questions.

¶ 8 On February 15, 2024, the circuit court conducted a permanency hearing. In a written order entered that same day, the circuit court found the appropriate permanency goal for Ryver was substitute care pending termination of parental rights. Following several continuances, the respondent's parental rights were terminated on January 28, 2025.

¶ 9 On February 20, 2025, the respondent filed a motion entitled, "Motion to Reconsider Termination of Respondent's Parental Rights." In the motion, the respondent set forth the history of the case as hereinabove outlined. The motion stated that Benney advised the respondent not to

4

"comply with the requests made to her by DCFS." The motion argued Benney's advice "amounted to ineffective assistance of counsel." Further, the motion argued the stipulated allegations were "vague and bare bones when viewed in the best light of the State," and that the circuit court's adjudication was improper.

¶ 10    A hearing was held on March 13, 2025, at which time Elliot reiterated the arguments set forth in the respondent's motion and requested the circuit court to restore her parental rights. Alternatively, Elliot requested the circuit court to "grant a rehearing to determine [the respondent's] fitness to parent." At the conclusion of the March 13, 2025, hearing, the circuit court denied the respondent's motion. This appeal followed.

¶ 11                                    II. ANALYSIS

¶ 12    On appeal, the respondent does not challenge[3] the circuit court's finding of unfitness or best interest determination. Rather, the respondent argues the circuit court's finding of neglect at the November 17, 2022, adjudicatory hearing requires reversal because "no evidence of abuse was presented by the State by testimony, proffer or a written stipulation of fact." The respondent, therefore, maintains the circuit court's "entry of an Adjudication of Neglect by stipulation when the State failed to present any evidence of an injurious environment and relied solely on allegations" was in error. Further, the respondent argues Benney was ineffective because he "agreed to stipulate to mere unsubstantiated allegations of neglect." In response, the State challenges this court's jurisdiction, arguing the respondent failed to timely appeal the circuit court's finding of neglect.

_____

[3]The respondent's appellate brief fails to present any argument as to how the circuit court committed error in terminating her parental rights or denying her motion to reconsider. Thus, the respondent has waived her arguments. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

¶ 13    As a challenge to jurisdiction is a threshold matter, we must address it first, before we can reach the merits of the respondent's appeal. We note the notice of appeal in this case shows the respondent is appealing from the circuit court's January 28, 2025, order terminating her parental rights, in addition to the March 13, 2025, denial of her motion to reconsider termination of parental rights. Therefore, the issue presented is whether this court has jurisdiction to review the propriety of the adjudicatory order entered on November 17, 2022, following an appeal from the March 13, 2025, denial of the respondent's motion to reconsider termination of parental rights. The issue of jurisdiction presents a legal issue we review *de novo*. *In re Custody of C.C.*, 2013 IL App (3d) 120342, ¶ 51.

¶ 14    As a general rule, appeals from final orders under the Act, other than those involving delinquency matters, are governed by the rules applicable to civil cases. See Ill. S. Ct. R. 660(b) (eff. Oct. 1, 2001). To perfect an appeal in a civil case, a party must file a notice of appeal within 30 days after the entry of a final order. See Ill. S. Ct. R. 303(a), (d) (eff. July 1, 2017). The purpose of a notice of appeal is to inform the prevailing party that the unsuccessful party has requested review of the judgment complained of and is seeking relief from it. *McGath v. Price*, 342 Ill. App. 3d 19, 30 (2003). As such, a notice of appeal "shall specify the judgment or part thereof or other orders appealed from." Ill. S. Ct. R. 303(b)(2).

¶ 15    While "[c]ompliance with the rules governing the deadline for filing a notice of appeal is mandatory and jurisdictional," we construe a notice of appeal liberally. *In re M.J.*, 314 Ill. App. 3d 649, 654 (2000); *Daniels v. Anderson*, 162 Ill. 2d 47, 62 (1994). Therefore, the failure to specify a particular order in the notice of appeal does not preclude our review of that order "so long as the order that is specified *directly relates back* to the judgment or order from which review is sought." (Emphasis added.) *Perry v. Minor*, 319 Ill. App. 3d 703, 708-09 (2001). Put differently,

6

it is appropriate to retain our jurisdiction to review a particular order if the order is "a step in the procedural progression leading to the judgment specified in the notice of appeal." (Internal quotation marks omitted.) *In re F.S.*, 347 Ill. App. 3d 55, 69 (2004).

¶ 16    It is well settled that adjudicatory orders are not within the procedural progression of orders terminating parental rights. See *In re M.J.*, 314 Ill. App. 3d at 655. Rather, "[a]n adjudicatory order is a step in the procedural progression leading to the dispositional order." *In re D.R.*, 354 Ill. App. 3d 468, 473 (2004). At an adjudicatory hearing, the circuit court determines whether a minor is abused, neglected, or dependent. See 705 ILCS 405/2-21(1) (West 2024). The dispositional order that follows determines the placement of the minor. *Id.* § 2-21(2). A such, the dispositional order is the final order from which an appeal properly lies. *In re M.J.*, 314 Ill. App. 3d at 655. Accordingly, any issues with the adjudicatory phase of a proceeding must be appealed following the entry of the dispositional order that follows (*id.*), including ineffective assistance of counsel claims. See *In re Ja. P.*, 2021 IL App (2d) 210257, ¶ 24.

¶ 17    In the case at bar, had the respondent wished to challenge the validity of the November 17, 2022, adjudicatory order, the respondent was required to file a notice of appeal within 30 days from the entry of the February 21, 2023, dispositional order. Instead, the respondent filed her notice of appeal following the March 13, 2025, denial of her motion to reconsider termination of parental rights. Further, the respondent does not specify that she was appealing from the February 21, 2023, dispositional order in her notice of appeal. Consequently, we lack jurisdiction over the respondent's arguments pertaining to alleged errors in the adjudicatory process. *Id.* ("Even where a respondent alleges that she received ineffective assistance of counsel during the adjudicatory phase of the proceedings, we categorically lack jurisdiction to entertain such an argument in an appeal from an order terminating parental rights.").

7

¶ 18    In the alternative, the respondent argues the circuit court erred when it failed to conduct a preliminary *Krankel* inquiry during the January 9, 2024, hearing. The respondent maintains the circuit court did not make any inquiry into the factual basis of "why she desired new counsel or why she believed that Mr. Benney should be replaced."

¶ 19    In 1984, the Illinois Supreme Court in *Krankel* announced the manner in which the court should handle ineffective assistance of counsel posttrial claims. *People v. Krankel*, 102 Ill. 2d 181 (1984). Importantly, *Krankel* involved a *pro se* claim of ineffective assistance of counsel in a criminal proceeding. *Id.*

¶ 20    Here, the present case involved a termination of parental rights proceeding. The termination of parental rights is governed by the Act, and all matters attendant thereto are civil in nature, and the general rules of civil practice apply. 750 ILCS 50/20 (West 2024). Further, there is no appellate case law that clearly holds the *Krankel* procedure applies under these circumstances. And significantly, our supreme court has yet to speak on whether the *Krankel* procedure applies to termination of parental rights proceedings.

¶ 21    Notwithstanding whether *Krankel* applies to termination of parental rights proceedings, at an adversarial evidentiary hearing conducted pursuant to *Krankel*, a defendant is entitled to relief upon a determination by the circuit court that the defendant has established both prongs of the *Strickland* analysis, *i.e.*, deficiency and prejudice. *People v. Boose*, 2025 IL App (4th) 231467, ¶ 49.

¶ 22    In her appellate brief, the respondent does not raise the particular contention that Benney advised her not to "comply with the requests made to her by DCFS." Instead, the respondent takes aim solely at Benney's representations during the November 17, 2022, adjudicatory hearing. Specifically, the respondent claims "the failure of Mr. Benney to advocate at the adjudicatory

8

hearing on behalf of his client, and his stipulating to neglect" satisfies the deficiency prong of *Strickland*. The respondent attempts to establish the prejudice prong merely by stating that had Benney "not agreed to a factless stipulation, the State would not have prevailed at the Adjudicatory Hearing in this matter." Having determined we lack jurisdiction to address the respondent's claims pertaining to the adjudicatory hearing, we decline to address the respondent's *Krankel* claim, as it pertains to alleged errors that occurred during the adjudicatory hearing in this case.

¶ 23                                III. CONCLUSION

¶ 24     As discussed above, we lack jurisdiction over arguments pertaining to alleged errors that occurred during the adjudicatory hearing in this case. Absent jurisdiction, we are powerless to act. See *In re Adoption of S.G.*, 401 Ill. App. 3d 775, 780 (2010) (stating that, if a respondent does not file a timely notice of appeal, the "reviewing court lacks jurisdiction over the appeal and must dismiss it"). This appeal is hereby dismissed.


¶ 25     Appeal dismissed.